WMG

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CR-526

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| SHAWN ALLEN FARMER | ) | |

The United States Attorney charges that:

## INTRODUCTION

1. MG was an individual who resided and did business in the Eastern District of North Carolina. Operating from his home in Knightdale, and from a business location in Raleigh, MG accepted fees from clients for alleged credit repair services.

2. SHAWN ALLEN FARMER was an individual who resided and did business in the Eastern District of North Carolina. SHAWN FARMER was a business affiliate of MG.

## COUNT ONE

3. Lowes is a national home improvement chain store that sold, among other things, various gift cards and stored-value cards. Lowes Customers had the ability to apply to Synchrony Bank for a Lowes credit card account. Synchrony Bank was an institution whose deposits were insured by the Federal Deposit Insurance Corporation.

4. Between October 6, 2017 and December 31, 2018, MG and SHAWN ALLEN FARMER engaged in a scheme to acquire things of value from Lowes using a Synchrony Bank credit account that they caused to be opened using a fraudulent credit profile. By doing so, MG and FARMER could acquire things of value from Lowes on credit without being held accountable for the debt.

5. To create the fraudulent credit profile, MG acquired a Social Security Number (SSN) that did not belong to FARMER or MG. The SSN that MG and Shawn Farmer used in the scheme ended in *7282.

6. After obtaining a SSN, MG then collaborated with FARMER to create other aspects of the fraudulent identity, such as the date of birth, email address, and phone number. Then, on October 17, 2017, MG texted all of the identifiers for the fraudulent identity back to FARMER, for use in the scheme.

7. After creating the fictitious identity, on or about January 5, 2018, FARMER and MG applied for a Lowes credit account, through Synchrony Bank. When applying for the credit card, MG and FARMER utilized the fictitious identity previously described, rather than FARMER's true identity. As a result, Synchrony Bank issued a credit account ending in *4090 to FARMER's fraudulent identity.

8. MG then instructed FARMER concerning how to use the fraudulent credit account at different Lowes stores to obtain stored value cards and convert those cards to cash. Between January 9, 2018 and December of 2019, FARMER used the Lowes card as instructed.

9. After purchasing stored-value cards on the fraudulent credit card at

2

Lowes, MG and FARMER did not pay the credit balance on the card.

10. On or about December 9, 2018, Synchrony Bank charged off more than $11,000 in losses on FARMER's fraudulent credit account.

11. Therefore, between October 6, 2017 and December 9, 2018, within the Eastern District of North Carolina and elsewhere, SHAWN ALLEN FARMER, aiding and abetting another, knowingly executed and attempted to execute a scheme and artifice to defraud a financial institution, to wit, Synchrony Bank; and to obtain any of the moneys, funds, credits, assets, and other property owned by and under the custody and control of Synchrony Bank, by means of materially false and fraudulent pretenses, representations, and promises.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TWO

### Background

12. The United States Small Business Administration (SBA) is an agency within the Executive Branch of the government of the United States that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

13. As part of this effort, the SBA enables and provides for loans through banks, credit unions and other lenders. These loans have government-backed guarantees. In addition to traditional SBA funding programs, The CARES Act,

which was signed into law in March 2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

14. One response to the COVID-19 outbreak was an expansion of an existing disaster-related program - the Economic Injury Disaster Loan (EIDL) - to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds can be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds are not intended to replace lost sales or profits or for expansion of a business.

15. Unlike certain other types of SBA-guaranteed loans, EIDL funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal and application. The EIDL application process, which also uses certain outside contractors for system support, collects information concerning the business and the business owner, including: information as to the gross revenues for the business prior to January 31, 2020; the cost of goods sold; and information as to any criminal history of the business owner. Applicants electronically certify that the information provided is accurate and are warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

## THE SCHEME TO MAKE FALSE EIDL CLAIMS

16. Between <u>April 3, 2020</u> and <u>July 6, 2020 (date of deposit to Totten account),</u> in the Eastern District of North Carolina and elsewhere, SHAWN ALLEN FARMER, the defendant herein, engaged in a scheme to fraudulently obtain disaster-related benefits in the form of SBA-sponsored Economic Injury Disaster (EIDL) loans.

17. FARMER submitted applications for loans under the EIDL program that contained false statements, misrepresentations and omissions related to, among other things, income, employment, and claimed business entities.

18. FARMER falsely attested on the aforementioned loan applications that the information presented was true and accurate.

19. FARMER maintained bank accounts at <u>Bank of America and Navy Federal Credit Union</u> for the purposes of receiving EIDL proceeds.

20. FARMER misapplied the EIDL proceeds for purposes unrelated to those authorized by the United States Small Business Administration.

## SPECIFIC CLAIMS

21. On or about April 3, 2020, FARMER submitted an EIDL application to the SBA for Innovative Mobile Detail/Pressure Wash LLC (application number ending 5215) that contained false statements and misrepresentations and omissions related to revenue of the company, and background information.

22. On or about June 26, 2020, FARMER submitted an EIDL application to the SBA for Shawn Farmer (application number ending 0956) that contained false statements and misrepresentations and omissions related to revenue, address and

5

background information.

23. On or about July 2, 2020, FARMER submitted an EIDL application to the SBA for M.T. (application number ending 8449) that contained false statements and misrepresentations and omissions related to employment, revenue, number of employees and background information.

24. On or about July 2, 2020, FARMER submitted an EIDL application to the SBA for J.M. (application number ending 2856) that contained false statements and misrepresentations and omissions related to employment, revenue, address, number of employees and background information.

25. On or about July 7, 2020, FARMER submitted an EIDL application to the SBA for B.L. (application number ending 7777) that contained false statements and misrepresentations and omissions related to employment, revenue, address, number of employees and background information.

26. Therefore, between April 3, 2020 and July 7, 2020, in the Eastern District of North Carolina and elsewhere the defendant, SHAWN ALLEN FARMER, made and presented claims upon and against the United States Small Business Administration, that is, the aforementioned claims for disaster-related benefits in the form of EIDL applications, knowing that the claims were false, fictitious, and fraudulent, as described herein, all in violation of Title 18, United States Code, Section 287.

6

Case 5:20-cr-00526-BO   Document 1   Filed 11/30/20   Page 6 of 8

## FORFEITURE NOTICE

The defendant is given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of the offense set forth in Count 1 of the Criminal Information, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), and/or Title 18, United States Code, Section 981(a)(1)(C) (the latter as made applicable by Title 18, United States Code, Section 2461(c)), any and all property, real or personal, constituting, or derived from, any proceeds the defendant obtained directly or indirectly as a result of the said offenses.

Upon conviction of the offense set forth in Counts 1 through 2 of the Criminal Information, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as made applicable by Title 18, United States Code, Section 2461(c), any and all property, real or personal, constituting, or derived from, any proceeds the defendant obtained directly or indirectly as a result of the said offenses.

The forfeitable property includes, but is not limited to, the gross proceeds personally obtained by the defendant.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant --

(1)   cannot be located upon the exercise of due diligence;

(2)   has been transferred or sold to, or deposited with, a third party;

(3)   has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

ROBERT J. HIGDON, JR.
United States Attorney

BY: WILLIAM M. GILMORE
Assistant United States Attorney

8